UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

                                          Plaintiff,              1:25-CV-0145 (AMN/PJE)

v.

$5,480.00 in U.S. Currency,

                                          Defendant.

---

**APPEARANCES:**                                   **OF COUNSEL:**

United States Attorney for the             **ELIZABETH A. CONGER, ESQ.**
Northern District of New York              Assistant United States Attorney
100 South Clinton St.
Syracuse, NY 13261-7198

445 Broadway
Room 218                                        **NICHOLAS C.E. WALTER, ESQ.**
Albany, NY 12207                         Assistant United States Attorney
*Attorneys for Plaintiff*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.     INTRODUCTION

On January 31, 2025, the United States of America ("Plaintiff") commenced this action via Verified Complaint for forfeiture *in rem* pursuant to 21 U.S.C. § 881(a)(6) and Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules" or "Supp. R."). *See* Dkt. No. 1 at 1. Plaintiff seeks forfeiture of $5,480.00 as property traceable to the proceeds of offenses in violation of 21 U.S.C. §§ 841 and 846 ("Defendant Currency"). *Id.* Presently before the Court is Plaintiff's Motion for Default Judgment and Final Order of Forfeiture under Rule 55(b)(2) of the Federal Rules of Civil Procedure and

1

General Order #15 of the United States District Court for the Northern District of New York. *See* Dkt. No. 9 ("Motion"). For the following reasons, Plaintiff's Motion is granted.

**II.   BACKGROUND**

    **A.   Plaintiff's Allegations**[1]

Plaintiff alleges that this matter arises from a narcotics transaction that occurred on March 16, 2021. *See* Dkt. No. 1 at ¶ 7. On that date, investigators with the Columbia Country Sheriff's Office, including a Task Force Officer with the Drug Enforcement Administration, observed an individual referred to as "Person 1" leaving a known drug house in Philmont, New York. *Id.* at ¶ 8. Person 1 "walked to the agreed upon meeting location," where law enforcement observed Duane McEwan ("McEwan") sitting in the passenger seat of a white Nissan registered in Connecticut. *Id.* at ¶ 9. An unidentified female was sitting in the driver's seat of the vehicle. *Id.* McEwan was known to law enforcement and, at that time, had an active arrest warrant for Petit Larceny issued by the Columbia County Sheriff's Office. *Id.* at ¶ 10.

Plaintiff alleges that law enforcement then observed Person 1 and McEwan conduct a "hand-to-hand drug transaction lasting approximately thirty seconds." *Id.* at ¶ 11. After Person 1 left, law enforcement followed as the white Nissan drove west on Main Street in Philmont to a Cumberland Farms gas station, where the female drive exited the vehicle and entered the gas station store. *Id.* at ¶¶ 12-13. Law enforcement approached McEwan as he exited the vehicle and handcuffed him. *Id.* at ¶ 14. A search of McEwan's person yielded a small bag of marijuana and the Defendant Currency. *Id.* at ¶¶ 14-15. McEwan told the investigators that the vehicle was not

---

[1] The Court draws these facts from the Verified Complaint. *See* Dkt. No. 1. The allegations therein are deemed admitted and assumed to be true for purposes of this Motion. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

his and that the woman who had entered the store was his wife, Stephanie McEwan. *Id.* at ¶ 17. He also admitted to having additional marijuana in the vehicle. *Id.* at ¶ 16.

Investigators then conducted a probable cause search of the vehicle. *Id.* at ¶ 18. They found a backpack containing black plastic bags of marijuana, drug paraphernalia, and a lunch box containing multiple clear bags of white chunky substances and other drug paraphernalia. *Id.* Investigators also found a McDonald's paper bag containing a white powdery substance, as well as a small velvet bag with multiple blue glassine envelopes containing an off-white powdery substance. *Id.* at ¶¶ 19-20.

A field test indicated that the white substances tested positive for fentanyl and cocaine. *Id.* at ¶ 21. Later tests determined that the substances consisted of "approximately 60 gross grams of fentanyl and 40 gross grams of cocaine." *Id.* at ¶ 22. On July 1, 2022, McEwan pled guilty to one count of possession of a controlled substance in the third degree and one count of possession of a controlled substance with intent to sell, both in violation of state law. *Id.* at ¶ 24; *see* N.Y. PENAL LAW § 220.16(1), (12) (McKinney 2022). McEwan is currently incarcerated and serving a seven-year sentence. *Id.* at ¶ 24.

### B. Procedural History

On October 2, 2024, Plaintiff filed its Verified Complaint for forfeiture *in rem*, seeking a declaration that the Defendant Currency be forfeited and condemned to the use and benefit of the United States. *See* Dkt. No. 1. That same day, the Clerk of Court issued a warrant for arrest of the Defendant Currency, *see* Dkt. No. 2, which was executed on February 3, 2025, *see* Dkt. No. 3.

Plaintiff served copies of the Verified Complaint, warrant for arrest, and notice to potential claimants via certified and regular mail to Duane McEwan at his place of incarceration and an individual named Erica Heintz at her last known address on February 3, 2025. Dkt. No. 3; Dkt.

3

No. 9-2 at ¶ 4.  On February 4, 2025, and for thirty consecutive days thereafter, Plaintiff also published public notice of this action on an official government forfeiture website, www.forfeiture.gov.  *See* Dkt. No. 6; Dkt. No. 9-2 at ¶ 5.

On April 16, 2025, Plaintiff requested an entry of default and submitted a supporting affidavit.  Dkt. Nos. 7, 7-1.  The Clerk entered default of the Defendant Currency on the same day.  Dkt. No. 8.  Plaintiff then filed the instant Motion for Default Judgment on April 17, 2025.  Dkt. No. 9.  Plaintiff served copies of the corresponding text notice (setting the motion response hearing deadline), as well as copies of the Motion papers, Dkt. Nos. 9 through 9-6, by certified and regular mail to Duane McEwan at his place of incarceration and Erica Heintz at her last known address.  *See* Dkt. No. 10.

The last date for potential claimants to file a verified claim was April 5, 2025.  Dkt. No. 6.  No one has filed a verified claim for the Defendant Currency.  *See generally* Docket Sheet.

### III.   STANDARD OF REVIEW

#### A.  Default Judgment

Rule 55 of the Federal Rules of Civil Procedure "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  The first step is governed by Rule 55(a), which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  *Id.* (quoting Fed. R. Civ. P. 55(a)); *see also* N.D.N.Y. L.R. 55.1 (setting forth affidavit requirements).  Entry of a default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."

4

*Mickalis*, 645 F.3d at 128. The second step "requires the plaintiff to seek a judgment by default under Rule 55(b)." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011). Entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled[.]" *Mickalis*, 645 F.3d at 128. A default judgment "ordinarily must be entered by the district judge, rather than by the clerk of court, except in certain circumstances[.]" *Id.*; *see also* N.D.N.Y. L.R. 55.2 (setting forth requirements for requesting a default judgment).

"Before entering a default judgment, the court 'must ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law.'" *Windward Bora, LLC v. Brown*, No. 21-cv-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (alteration in original) (quoting *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-cv-6722, 2020 WL 1694356, at *4 (E.D.N.Y. Apr. 7, 2020)). Additionally, "[t]here must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (citations omitted). When evaluating a request for a default judgment, a "district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *Mickalis*, 645 F.3d at 129 (quoting Fed. R. Civ. P. 55(b)(2)(B)-(C)).

While a court may enter a default judgment if the requisite standard is satisfied, the Second Circuit has cautioned that default judgments "are generally disfavored and are reserved for rare occasions[.]" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Because we have 'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . we have characterized a district court's discretion in proceeding under Rule 55 as 'circumscribed.'" *Mickalis*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron*, 10 F.3d at 95; and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)).

### B. Forfeiture *in Rem*

"*In rem* forfeiture actions are governed by Rule G of the [Supplemental Rules] and the Civil Asset Forfeiture Reform Act of 2000," 18 U.S.C. § 981 *et seq. See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). "The Federal Rules of Civil Procedure also apply to [forfeiture *in rem*] proceedings except to the extent that they are inconsistent with the[] Supplemental Rules." Supp. R. A(2); *accord United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-CV-5567, 2015 WL 5178121, at *4 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,413.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 Fed. Appx. 17 (2d Cir. 2017).

Under Supplemental Rule G, a complaint for forfeiture *in rem* must:

a) be verified;

b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue;

c) describe the property with reasonable particularity;

d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;

6

> e) identify the statute under which the forfeiture action is brought; and
>
> f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Supp. R. G(2). ). Furthermore, "[i]f the defendant is not real property . . . the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Supp. R. G(3)(b)(i).

Once the government has commenced a forfeiture *in rem* action, a claimant "who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Supp. R. G(5)(a)(i); *accord Vazquez-Alvarez*, 760 F.3d at 197. The claimant must file their claim "not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint." *See* 18 U.S.C. § 983(a)(4)(A); *accord* Supp. R. G(5)(a)(ii). "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." Supp. R. G(5)(b). However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

A "fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Supplemental Rule G goes further, requiring Plaintiff to send notice to "any person who reasonably appears to be a potential claimant on the facts known to the [G]overnment before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)," Supp. R. G(4)(b)(i), and notice by publication, which is required unless certain conditions are met, can be effectuated by "posting a notice on an official internet government

forfeiture site for at least 30 consecutive days," Supp. R. G(4)(a)(iv)(C). "The notice must be sent by means reasonably calculated to reach the potential claimant." Supp. R. G(4)(b)(iii)(A).

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

## IV.     DISCUSSION

### A.  Rule 55

The Court first addresses whether Plaintiff has satisfied the procedural requirements of Rule 55 of the Federal Rules of Civil Procedure. On April 16, 2025, Plaintiff requested a clerk's entry of default under Rule 55(a) and General Order #15. Dkt. No. 7. In the accompanying affidavit, Plaintiff affirmed the following: (1) "[a]ll known potential claimants were served"; (2) "public notice of this action was published on an official government forfeiture site . . . for thirty consecutive days"; (3) Plaintiff "believes it has taken reasonable steps to attempt to provide notice of this action to all known, and unknown, potential claimants[;] [s]uch claimants have been served with the pleadings in this action, and failed to plead or otherwise defend the action, as provided by the Supplemental Rules"; (4) "[n]either a verified claim nor an answer has been filed in this action, and the last date for potential claimants to file a claim" had passed; and (5) "no person thought to have an interest in the Defendant Currency is an infant, incompetent, or presently engaged in military service." Dkt. No. 7 at ¶¶ 4-8. Thus, Plaintiff properly obtained the clerk's entry of default. Dkt. No. 8.

Plaintiff then moved for default judgment pursuant to Local Rule 55.2(b), attaching the clerk's certificate of entry of default, Dkt. No. 9-5, a proposed form of default judgment, Dkt. No. 9-3, a copy of the pleading to which no response has been made, Dkt. No. 9-6, and a supporting affidavit, Dkt. No. 9-2.  Plaintiff has therefore complied with the procedural requirements of Rules 55 and Local Rule 55.2.

### B. Supplemental Rule G

The Court next examines whether Plaintiff has complied with the requirements of the Supplemental Rules.  *See Vazquez-Alvarez*, 760 F.3d at 197.  In compliance with Supplemental Rule G(3)(b)(i), the Clerk issued a warrant to arrest the Defendant Currency, which was duly executed by U.S. Marshal.  Dkt. Nos. 2, 5.

Plaintiff also complied with the notice requirements of Supplemental Rule G(4). First, Plaintiff published public notice of the action on an official government forfeiture website, www.forfeiture.gov, from February 4, 2025 through March 5, 2025, in satisfaction of Supplemental Rule G(4)(a).  *See* Dkt. Nos. 6, 9-2 at ¶ 5.  Second, in satisfaction of Supplemental Rule G(4)b, Plaintiff provided direct notice to all known potential claimants by means reasonably calculated to reach the potential claimants.  Specifically, Plaintiff served copies of the Verified Complaint, warrant for arrest of articles *in rem*, and notice to potential claimants on Duane McEwan via certified and regular mail at his place of incarceration.  *See* Dkt. No. 9; Supp. R. G(4)(b)(iii)(c).  Plaintiff also served the same on Erica Heintz by certified and regular mail to her last known address.  See Dkt. No. 9.  Such service is sufficient for Supplemental Rule G(4). *See United States v. Starling*, 76 F.4th 92, 96 n.2 (2d Cir. 2023) ("The government need not provide formal service of process in a civil forfeiture proceeding; it must only give notice 'to any person who reasonably appears to be a potential claimant on the facts known to the government,' and it

9

may do so by any 'means reasonably calculated to reach the potential claimant.'" (quoting Supp. R. G(4)(b)(i), (iii)(A))).

Lastly, Plaintiff must satisfy the requirements of Supplemental Rule G(2). The Court finds the following as to the Verified Complaint: (1) the Complaint is verified in satisfaction of Supplemental Rule G(2)(a), Dkt. No. 1 at 6; (2) it states the grounds for subject matter jurisdiction, *in rem* jurisdiction over the Defendant Currency, and venue in satisfaction of Supplemental Rule G(2)(b), *id.* at ¶¶ 4-6; (3) it describes the property with reasonable particularity in satisfaction of Supplemental Rule G(2)(c), *id.* at ¶¶ 2, 15; (4) it states the Defendant Currency's location when seizure occurred and when the action was filed in satisfaction of Supplemental Rule G(2)(d), *id.* at ¶¶ 3, 15; and (5) it identifies the statute under which the forfeiture action is brought in satisfaction of Supplemental Rule G(2)(e), *id.* at 1.

### C. Sufficiency of the Verified Complaint

The Verified Complaint must also "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law.") (alterations, citation, and internal quotation marks omitted). To meet its burden of proof, the Government must "establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Accordingly, the Government must plead facts that support a reasonable belief that it could "establish that there was a substantial connection between [Defendant Currency] and the offense" on which Plaintiff's theory of forfeiture is premised. *See* 18 U.S.C. § 983(c)(3); *see also*

*United States v. Two Hundred and Eighty Thousand Dollars and Zero Cents, More or Less, in U.S. Currency*, 20-CV-4442 (AMD), 2021 WL 2980540, at *3 (E.D.N.Y. July 14, 2021).

Plaintiff premises its action on 21 U.S.C. § 881(a)(6), which provides for the forfeiture of "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter[.]" *See* Dkt. No. 1 at 1. Specifically, Plaintiff alleges that the Defendant Currency constitutes proceeds traceable to a narcotics transaction. *See id.* at ¶¶ 7, 11, 15. Plaintiff therefore theorizes that the Defendant Currency is subject to forfeiture because it was involved in the commission of a violation of 21 U.S.C. §§ 841 and 846. *See id.* at 1. Thus, the Government must plead facts that support a reasonable belief that it could "establish that there was a substantial connection between [Defendant Currency] and the [alleged violation of 21 U.S.C. §§ 841 and 846]." *See* 18 U.S.C. § 983(c)(3). The Court now turns to whether Plaintiff has pled such facts.

The Court finds that Plaintiff has sufficiently pled a substantial connection between the Defendant Currency and narcotics trafficking. Plaintiff alleges that just prior to searching and seizing the Defendant Currency from Duane McEwan's person, law enforcement observed Person 1 depart "a known drug house," walk to a meeting location, then conduct a "hand-to-hand drug transaction" with McEwan. Dkt. No. 1 at ¶¶ 8, 11. This allegation establishes a substantial connection between the Defendant Currency and the relevant statutory violation. Although Plaintiff does not allege that the Defendant Currency was specifically exchanged in the observed transaction, they need not do so for the purpose of showing the required connection. *See United States v. $11,640.00 in U.S. Currency*, No. 7:13-CV-184 (TWD), 2014 WL 4217389, at *6 (N.D.N.Y. Aug. 25, 2014) (holding that the Government "need not prove that there is a substantial

11

connection between the property and any specific drug transaction. Instead, the Government may prove more generally, based on a totality of the circumstances, that the property is substantially connected to narcotics trafficking.") (citation and internal quotation marks omitted).

Plaintiff also pleads other facts that further support a substantial connection. For example, the amount at issue is an unusually large sum of cash to carry on one's person. *See United States v. Gonzalez*, 922 F.2d 1044, 1056 (2d Cir.), *cert. denied*, 502 U.S. 1014 (1991) (holding that large amounts of cash tend to demonstrate narcotics trafficking activity) (citations omitted); *see also United States v. $32,507.00 in U.S. Currency*, No. 14-CV-5118, 2014 WL 4626005, at *2 (S.D.N.Y. Sept. 16, 2014) ("Carrying large sums of cash is not per se evidence of drug-related illegal activity, but it is suggestive of involvement in illegal activity more generally.") (citations and quotation marks omitted). Additionally, Plaintiff alleges that law enforcement found the Defendant Currency with a small bag of marijuana and that the vehicle in which McEwan was sitting before he was searched contained cocaine, fentanyl, and other unspecified drug paraphernalia. Dkt. No. 1 at ¶¶ 15, 18-22; *see, e.g.*, *$22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 250 (S.D.N.Y. 2010) (sufficient facts to demonstrate that money had a "substantial connection to drug trafficking," when a "large amount of cash [was] found . . . in close proximity to [] drugs and drug paraphernalia").

Thus, Plaintiff has met its burden to establish that the Defendant Currency is subject to forfeiture. *See* 18 U.S.C. §§ 983(c)(1), 983(c)(3); *see also* Supp. R. G(2)(f); 18 U.S.C. § 981(a)(1)(A). Accordingly, Plaintiff's Motion is granted.

V.     **CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion for Default Judgment and Final Order of Forfeiture, Dkt. No. 9, is **GRANTED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order, as well as the forthcoming Final Order of Forfeiture, on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 7, 2025
       Albany, New York

*/s/ Anne M. Nardacci*
Anne M. Nardacci
U.S. District Judge